## MARTIN v. MORRISON.

Court of Appeals of District of Columbia.
Submitted March 7, 1929. Decided April 1, 1929.

No. 4726.

Robert Hardison, of Washington, D. C., for appellant.

Charles V. Imlay and Charles E. Wainwright, both of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The action was brought by appellant as plaintiff to recover damages from appellee because of alleged negligence on his part, causing the death of plaintiff's intestate. The lower court sustained a general demurrer to the amended declaration, and entered judgment for the defendant.

The declaration states in substance that the deceased, Elmer Martin, was a skilled structural iron worker, 39 years of age, and was employed by appellee in the erection of a coal bunker. The bunker was a V-shaped structure, constructed of iron sheets or plates, about 12 feet wide at the top and about 15 feet deep, and was being erected about 50 feet above the floor of a power house. At the time in question, the bunker was in place and the deceased was engaged with three fellow workmen in joining the metal sheets of the structure together by means of rivets, the sheets having been previously bolted together temporarily. The deceased and a fellow employee were working on the outside of the bunker supported by a scaffold, while another fellow employee was working on the inside. The scaffold on which the two men were working had been erected and swung by the deceased and his fellow workmen several hours previous to the accident, and was suspended by means of ropes attached at each end to eyebolts fitted into the bunker and secured on the inside by a tap or nut. This was the usual and customary way of swinging such a scaffold. While the men were thus engaged in the work, the nut on one eyebolt became detached from the bolt, either because of the vibration caused by a pneumatic hammer used by a fellow employee, or because the nut was by mistake unscrewed from the eyebolt by the employee at work upon the inside of the bunker. The eyebolt was thereby released, and that end of the scaffold fell, precipitating the deceased to the ground, and causing his death.

The plaintiff first complains that the defendants failed to furnish the deceased with a reasonably safe place in which to carry on the work, and contends that in view of the great height of the scaffold above the ground a temporary flooring immediately beneath it should have been constructed for the safety of the employees.

It does not appear, however, that this risk was unusual in such employment, and, moreover, it was an obvious risk and well known to the deceased. It must be held therefore that he assumed the risk as one incident to his employment. "The risks usually assumed by a servant are those ordinarily incident to his discharge of his duty in the particular employment, and those not ordinarily so incident but of which he has actual or constructive knowledge with full appreciation of the dangers that may flow therefrom." 39 C. J. 684; Spates v. Wells Bros., 43 App. D. C. 555, 560.

The plaintiff complains that defendants failed to furnish adequate, sufficient, and safe material, tools, and appliances with which to construct, equip, suspend, and maintain in position the necessary scaffold.

It appears, however, that the scaffold was swung in the usual and ordinary manner by the deceased and his fellow employees. It therefore became their duty to carefully inspect the materials and appliances used by them in the construction and adjustment of the scaffold and to reject any that was defective. The deceased was a skilled and experienced workman in this industry and was competent to judge of the character of such materials. "The doctrine of law is established beyond question, that where an employee undertakes and continues the use of defective and unsafe appliances, either with actual notice of such defect, or where the same is open to ordinary observation, in the usual course of its use, he must be deemed to have accepted the risk of all danger reasonably to be apprehended from such use, and cannot recover of his employer." Butler v. Frazee, 25 App. D. C. 392, 403; Washington Southern R. Co. v. Smith, 45 App. D. C. 192, 203.

The reasonable inference from the facts stated in the declaration is that the deceased came to his death because of the negligence of his fellow employees. If the workman who was employed upon the inside of the bunker by mistake released the nut which held the eyebolt in place, the act was plainly

negligent, and was the cause of the accident. If, however, the nut was released by the vibration caused by the use of a pneumatic hammer, the conclusion is irresistible that the nut was improperly adjusted or that an unfit nut was used for the purpose. Either of these explanations implies the negligence of one or more of the fellow employees of the deceased, if not of the deceased himself, and the defendant would not be liable for the consequences. "Perhaps no general rule or principle of law has been more firmly established than that a master or employer is not responsible to these engaged in his employment for injuries suffered by them as the result of the negligence, carelessness or misconduct of other servants of the same employer, engaged in the same common or general service or employment." 18 R. C. L. p. 712.

The declaration contains other specifications of alleged negligence upon the part of defendant, but in our opinion they are all overcome by the application of the established rules relating to assumed risk by employees, of contributory negligence, and of the negligence of fellow servants not imputable to the employer.

The judgment of the lower court is affirmed, without costs.